# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

BETTY ANN CHAPMAN,

    Plaintiff,

v.                                    Case No.: PWG-10-304

MICHAEL ASTRUE,

    Commissioner of Social Security,

    Defendant.

## MEMORANDUM

Betty Ann Chapman (sometimes referred to as "Claimant" or "Ms. Chapman") brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. Pending, by their consent, are the parties' cross-motions for summary judgment. ECF Nos. 11, 16. No hearing is necessary. Loc. R. 105.6. For the reasons set forth below, the decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this Memorandum.

**I.    BACKGROUND**

Ms. Chapman applied for DIB on December 29, 2005, alleging that she has been disabled since June 1, 1998,[1] Tr. 16, due to "left knee arthritis, left hand, right shoulder, hepitis [sic] C, depression, . . . job injuries, . . . high blood pressure," *id.* at 59, and cataracts, *id.* at 90. Ms. Chapman's claim was denied initially and upon reconsideration. *Id.* at 38, 42. Ms. Chapman filed a timely request for a hearing and appeared, with representation, before the Honorable Robert W. Young, Administrative Law Judge ("ALJ") on May 21, 2008. *Id.* at 16.

In a written decision dated October 1, 2008, the ALJ denied Ms. Chapman's claim, concluding that she had not been under a disability within the meaning of the Social Security Act at any time from April 30, 2006 through the date of the decision. *Id.* at 29. The Appeals Council denied Ms. Chapman's request for review on December 18, 2009, making the ALJ's decision the final, reviewable decision of the Commissioner. *Id.* at 5.

## II. STANDARD OF REVIEW

The function of this Court is not to review Ms. Chapman's claim *de novo* or reweigh the evidence of record. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1996). It is such relevant evidence as a reasonable mind might accept as adequate to support a verdict were the case before a jury. *Johnson v. Califano*, 434 F. Supp. 302, 307 (D. Md. 1977). Usually, if substantial evidence

---

[1] When Ms. Chapman appeared before an administrative law judge for a hearing, she amended the alleged onset date of disability to April 30, 2006. Tr. 16.

supports the Commissioner's decision, the decision must be upheld. *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see* 42 U.S.C. § 405(g).

In addition to reviewing the ALJ's decision to determine whether it is supported by substantial evidence, this Court also must determine whether the ALJ properly applied the law. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman*, 829 F.2d at 517. After reviewing the ALJ's decision, this Court may affirm, modify, or reverse the decision of the ALJ and may remand the case for a rehearing. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *Coffman*, 829 F.2d at 519; *Vietek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971); *see* 42 U.S.C. § 405(g).

In determining whether a claimant is disabled within the meaning of DIB, the Commissioner has promulgated regulations that set forth a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520. This five-step process, described by the Supreme Court in *Bowen v. Yuckert*, 482 U.S. 137 (1987), begins with the ALJ determining whether the claimant is engaged in substantial gainful activity, which is defined for DIB claims in 20 C.F.R. §§ 404.1510, 404.1572. If the claimant is engaged in a substantial gainful activity, the claimant is not considered disabled. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ next examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. §§ 404.1509 and 404.1520(c).

If the impairment or impairments meet the durational and severity requirements, the ALJ's analysis proceeds to a third step—a consideration of whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1, which is known as the Listing of Impairments ("Listings"). *Bowen*, 482 U.S. at 141; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). If one of the Listings is met, disability will automatically be found without consideration of age, education, or work experience. If no Listing is not met, however, the ALJ moves to a fourth step and considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *Bowen*, 482 U.S. at 141; *Mastro*, 270 F.3d at 177. An individual's RFC "is the most [the individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). If the ALJ finds that a claimant retains the RFC to perform past relevant work, the claimant will be found not to be disabled. *Bowen*, 482 U.S. at 141.

If a determination is made that the claimant is not capable of performing his or her "past relevant work," the ALJ moves to a fifth step and considers whether, based upon the claimant's RFC, age, education, and past work experience, the claimant is capable of some other work. *Id.* at 142; *Mastro*, 270 F.3d at 177. At this step the burden shifts to the Commissioner. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant suffers solely from exertional impairments,[2] the Medical-Vocational guidelines, as defined in Part 404, Subpart P, Appendix 2 ("Guidelines"), provide rules to be applied in determining whether a claimant is disabled. An ALJ, in applying the Guidelines, will examine the claimant's age, education, work experience,

---

[2] Impairments may be exertional or non-exertional. An exertional limitation is one that affects the claimant's ability to meet the strength demands of certain jobs. 20 C.F.R. § 416.969a(b). A non-exertional impairment is a "limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not." *Gory v. Schweiker*, 712 F.2d 929, 930 (4th Cir. 1983). "[W]here the claimant's impairment is non-exertional—not manifested by a loss of strength or other physical ability—or is marked by a combination of exertional and non-exertional impairments, the grids' Rules are not conclusive, and full individualized consideration must be given to all relevant facts of the case." *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983).

and RFC to determine which rule applies. 20 C.F.R. § 404.1520(d). The rule will direct a conclusion as to whether a claimant is disabled. *Id.*

The Guidelines, however, will not be used when the claimant suffers from both exertional and non-exertional impairments. 20 C.F.R. § 404.1569a(d). In such a case, the ALJ is required to employ the use of a vocational expert to determine whether the claimant is still capable of some work. 20 C.F.R. § 404.1560. If the claimant is not capable, disability will be found.

### III. ALJ'S DECISION

After reviewing all of the evidence, including the medical records and Ms. Chapman's testimony, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since April 30, 2006, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> . . . .
>
> 3. The claimant has the following severe impairments: affective disorder; high blood pressure; and a history of Hepatitis C and musculoskeletal impairments (20 CFR 404.1520(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work activity involving sitting for up to 6 hours in an 8 hour work day, standing and walking up to 6 hours in an 8 hour work day, lifting no more than 20 pounds at a time, with frequent carrying lifting of carrying of objects weighing up to 10 pounds, occasional climbing ramps and stairs but never requiring climbing ladders, ropes or scaffolds, involving frequent balancing, occasional stooping, kneeling, crouching and crawling, not requiring frequent use of the upper extremities for pushing or pulling or reaching over head, which can be performed adequately in an environment with limited social interactions at her own pace with minimal stressors.
>
> . . . .

5

6. The claimant is capable of performing past relevant work as a custodian. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

. . . .

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2006 through the date of this decision (20 CFR 404.1520(f)).

Tr. 18, 19, 20, 28, 29.

## IV. SUMMARY OF EVIDENCE

Ms. Chapman saw various medical professionals between 2003 and 2008 for injuries to her left knee and wrist, right shoulder, pain, carpal tunnel syndrome, hypertension, depression, and hepatitis C. Tr. 113-72, 196-206, 211, 216, 236, 247-50, 259, 261-64. Dr. Marshall S. Bedine treated Ms. Chapman between April 16, 2003 and December 28, 2005, during which time Ms. Chapman had a colonoscopy and Dr. Bedine monitored Ms. Chapman's hepatitis C. Tr. 174-83. Dr. Bedine observed on December 28, 2005 that Ms. Chapman has cataracts, adding that he "would like to wait and see whether she is going to need cataract surgery." *Id*. at 174. Dr. Bedine referred Ms. Chapman to Dr. Mark Sulkowski at Johns Hopkins Medicine for a hepatitis C evaluation on April 25, 2006. *Id.* at 207. Dr. Sulkowski noted: "HEENT system is remarkable for cataracts. She has been seen by the opthamologist at Wilmer. At some point, it was planned to have the procedure done. Her last visit there was 12/28/05. At that time, she was seen to have cataracts." *Id.* at 208. On June 27, 2006, Dr. Marcia Wolf examined Ms. Chapman's musculoskeletal systems and found that Ms. Chapman's left knee was "enlarged with a mild effusion, and prepatellar swelling"; that Ms. Chapman had decreased range of motion at the left knee; and that her range of motion in the extremities, grip strength, stance, and gait were normal. *Id.* at 233. Additionally, Dr. Wolf noted that Claimant has cataracts. *Id*. at 233.

At the hearing held on May 21, 2008 before ALJ Young, Ms. Chapman said that she last worked as a custodian in 2006 for the Baltimore County School System and then briefly for At

Once, Inc. *Id.* at 304-05. When asked about her disability, Ms. Chapman responded, "I have knee problems. I had a right shoulder problem. I had a problem with my left hand and I have cataracts." *Id.* at 309. Ms. Chapman testified that she has cataracts in both eyes, which cause her vision to be "blurry all the time." *Id.* at 313. She also testified that does she not "read much anymore since [she developed] cataracts," *id.* at 302; that the last time she read anything was "[a]bout three years ago"; and that if "it's not in large writing" she "cannot see it period." *Id.* at 323. Ms. Chapman testified that she last drove "about two years, three years ago." *Id.* at 321.

At the hearing, ALJ Young also heard testimony from Ellen Jenkins, a Vocational Expert. *Id.* at 325. Based on the evidence of record and Ms. Chapman's testimony, Ms. Jenkins determined that an individual in a situation similar to Ms. Chapman with limitations including "no frequent pushing and pulling, . . . postural limitations, . . . [l]imited reaching overhead, . . . [and] some non-exertional limitations," *id.* at 326, would be able to perform "the following light, unskilled positions . . . copier operator . . . [t]icket marker, clothing . . . gate tender," *id.* at 326-27. She also opined that the job of a custodian could be done with the limitations indicated as long as there was "no buffing of the floors." *Id.* at 327. Ms. Jenkins also opined that if an individual as described above were expected to miss thirty days of work per year, there would be "no work available" because "the thirty days of missed work would reduce the productivity to a level such that no employer would keep that hypothetical person." *Id.* at 328. Finally, Ms. Jenkins opined that if an individual in Ms. Chapman's situation "could not maintain the mental alertness and concentration necessary to perform even simple jobs," "that would also negate the positions" that she had proffered. *Id.*

V.     **ANALYSIS**

Ms. Chapman contends that ALJ Young erred in failing to find that Ms. Chapman's cataracts were a "severe" visual impairment at step two of the sequential evaluation. Pl.'s Br. 39. The Commissioner argues that, because Ms. Chapman failed to meet her burden of establishing that she suffers a severe impairment, ALJ Young was correct in not finding Ms. Chapman's cataracts to be an impairment. Def.'s Br. 20.

At step two of the sequential evaluation, the adjudicator must make a finding as to severity of the alleged impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include "capacities for seeing, hearing, and speaking." 20 C.F.R. § 404.1521(b).

There is ample, uncontroverted evidence in the record that Ms. Chapman has cataracts that limit her ability to see. Ms. Chapman stated in her Social Security Administration Function Report that she has cataracts in both eyes that cause cloudy vision and an inability to tolerate bright lights. Tr. 90. Also, Ms. Chapman testified about her cataracts at the May 21, 2008 hearing, stating that they cause her vision to be "blurry all the time" and prevent her from reading anything that is "not in large writing." *Id.* at 313, 323. Additionally, at least three physicians observed that Ms. Chapman has cataracts. *Id.* at 174, 208, 233. Dr. Bedine noted on December 28, 2005 that Ms. Chapman has cataracts, adding that he "would like to wait and see whether she is going to need cataract surgery." *Id.* at 174. Dr. Sulkowski noted on April 25, 2006: "HEENT system is remarkable for cataracts. She has been seen by the opthamologist at Wilmer. At some point, it was planned to have the procedure done. Her last visit there was 12/28/05. At that time, she was seen to have cataracts." *Id.* at 208. On June 27, 2006, Dr. Wolf noted that Claimant had cataracts. *Id.* at 233.

In his decision, ALJ Young acknowledged Claimant's allegations of cataracts in his summary of the evidence and stated that, according to her testimony, Ms. Chapman "has cataracts in both eyes which have not been corrected because she has no insurance. Her vision is blurry all the time and she cannot even read a book like she used to. She does not drive." *Id.* at 21. ALJ Young also observed that Ms. Chapman "reported that she had been seen by an ophthalmologist in December 2005 but no surgery was indicated at that time." *Id.* at 25. Additionally, ALJ Young noted that "while the claimant's testimony and the medical evidence of record also mention cataracts, there are no reports from ophthalmologists or optometrists to corroborate the claimant's statements." *Id.* at 26.

However, despite this evidence, ALJ Young failed to make a finding as to whether this alleged impairment was severe; he did not determine whether Claimant's cataracts severely limited her ability to perform basic work activities, such as seeing. 20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1521(a)-(b). Nor did he make a finding that Ms. Chapman's testimony regarding the blurriness of her vision was not credible. Moreover, an ALJ cannot reject a physician's opinion without obtaining another medical opinion to discredit the opinion. *See Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("[A]n ALJ is not free to set his own expertise against that of a physician who presents competent evidence."). ALJ Young noted that the physicians who observed that Ms. Chapman has cataracts were not ophthalmologists or optometrists, but he did not obtain a medical opinion to the contrary. Indeed, there is no contradictory evidence in the record. Because there is undisputed evidence of record, including medical evidence, that Ms. Chapman had cataracts and her cataracts impacted her ability to see, ALJ Young should have made a finding regarding the severity of this impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Consequently, the ALJ did not properly apply the law, *see Coffman*, 829

9

F.2d at 517, and this case must be remanded for the law to be applied properly, in accordance with this Memorandum.

## VI. CONCLUSION

In sum, there is evidence in this case that leads to the conclusion that Claimant had cataracts that may have been a severe impairment, but this evidence was not considered. This error at step two inevitably infects the analysis at the subsequent steps, including steps four and five.[3] *See Brown v. Barnhart*, 182 Fed. App'x 771, 774 (10th Cir. 2006) (ALJ's failure to properly consider fibromyalgia at step two impaired analysis at subsequent steps). The Court therefore finds that the ALJ failed to evaluate adequately the relevant evidence in the record that may have had a bearing on the determination of Claimant's entitlement to disability benefits. Accordingly, I am remanding this case to the Agency for further consideration. A separate order shall issue.

Dated: <u>March 24, 2011</u>                    ____/s/_____
                                                                Paul W. Grimm
                                                                United States Magistrate Judge

---

[3] Claimant also argues that the ALJ's findings at steps four and five are unsupportable. However, the Court finds that the ALJ failed to consider adequately all of Claimant's alleged impairments at step two, and this error inevitably infects the analysis at the remaining steps of the sequential evaluation. Therefore, the Court need not address the propriety of the ALJ's additional findings at this time.